IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 14, 2011

**KEVIN JOEL HERNANDEZ v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2000-D-1876     J. Randall Wyatt, Jr., Judge**

**No. M2011-00038-CCA-R3-PC - Filed December 15, 2011**

The petitioner, Kevin Joel Hernandez, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his conviction of conspiracy to possess with intent to sell more than seventy pounds of marijuana within one thousand feet of a school zone and resulting fifteen-year sentence to be served at one hundred percent.  The appellant contends that he received the ineffective assistance of counsel because trial counsel (1) failed to investigate his case adequately, consult with him, or prepare for trial and (2) failed to request a jury instruction on facilitation.  Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JERRY L. SMITH AND JAMES CURWOOD WITT, JR., JJ., joined.

Patrick G. Frogge, Nashville, Tennessee, for the appellant, Kevin Joel Hernandez.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Tammy Meade, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

Our review of the Tennessee Supreme Court's opinion on direct appeal reveals the following facts:  On April 18, 2000, the Tennessee Bureau of Investigation (TBI) and the Metropolitan Nashville Police Department conducted an undercover drug sting operation based upon information they received from Jose Rodriguez.  State v. Vasques, 221 S.W.3d

514, 517 (Tenn. 2007). Rodriguez told police officers that the suppliers of his illegal drugs could be found at 1035 and 1147 Antioch Pike in Nashville. Id. Rodriguez also set up a drug buy for one hundred pounds of marijuana from his supplier, Luis Romero. Id. The buy was to take place at a carwash on Nolensville Road. Id. Officers set up surveillance at the Antioch Pike addresses and the carwash. Id. They saw two men in a white Toyota Camry arrive at the carwash. Id. The driver of the Camry, Romero, got into Rodriguez's vehicle while Romero's passenger, the petitioner, waited in the Camry. Id. Officers saw a man in a gray van parked nearby and noticed that the man appeared to be talking on a radio. Id. Romero got back into the Camry and drove to a Walgreens on Nolansville Road where the Camry was met by a white Ford Taurus. Id. at 518. The Taurus left Walgreens and traveled to 1147 and then 1035 Antioch Pike. Id. Two Hispanic males in a black Pontiac Firebird arrived at 1035 Antioch Pike and followed the Taurus back to Walgreens. Id. Then the Camry returned to the carwash, followed by the Taurus. Id. at 517. The Firebird parked in a Burger King parking lot within view of the carwash. Id. at 518. When an officer gave the "'take down'" signal, Romero tried to flee but was arrested by a detective. Id. The police also arrested the petitioner, who had remained in the Camry; two Hispanic men in the Taurus; and the two men in the Firebird. Id.

The police found a loaded handgun and a walkie talkie in the Camry,[1] a loaded shotgun behind the front seat in the Firebird, and about one hundred pounds of marijuana in the trunk of the Taurus. Id. Searches of the two houses on Antioch Pike revealed money, electronic scales, guns, marijuana, and drug transaction ledgers. Id. at 519. The six arrested men, including the petitioner, were tried jointly, and a jury convicted them of conspiracy to possess with intent to sell more than seventy pounds of marijuana within one thousand feet of a school zone. Id. at 517. The trial court sentenced each of them to fifteen years in confinement. Id. Our supreme court affirmed the petitioner's conviction. Id.

The petitioner filed a timely petition for post-conviction relief, arguing that he received the ineffective assistance of counsel. The post-conviction court appointed counsel, and counsel filed an amended petition, arguing that the petitioner received the ineffective assistance of counsel because, in pertinent part, trial counsel failed to investigate the case adequately or request an instruction on facilitation.

At the evidentiary hearing, the petitioner testified through an interpreter that he

---

[1]We have reviewed the trial transcript. An officer testified that he approached the passenger side of the Camry, opened the door, and saw the petitioner sitting in the passenger seat with "a little Radio Shack walkie-talkie" on his lap. The officer also saw a pistol between the passenger seat and the passenger door frame. He stated that the "pistol grip [was] facing up" and that the pistol was "right where if you reached to it with your right hand."

understood some English but did not understand English at the time of trial. He said that on the day of the crime, he was in Romero's car because "they were giving me a ride to see my mom." He said that he did not know Romero sold drugs and that "[Romero] told me he was going to take me to talk with a friend of his, but he did not tell me what it was about." They drove to the carwash, and Romero got out of the car. The petitioner said that shortly thereafter, everyone "took off running." However, the petitioner stayed in the Camry because he did not know what was happening. The police arrested him, and he was unable to make bond. He said he had been in jail since his arrest.

The petitioner testified that counsel was appointed to represent him and that counsel "never met with me, just when I came to court and that is it." He said counsel never used a translator during their meetings and that he learned about his case through one of his co-defendants, Roberto Vasquez. Vasquez understood English and told the petitioner what Vasquez's attorney said to Vasquez. The petitioner thought the State made a plea offer for him to plead guilty in exchange for a twelve-year sentence to be served at thirty percent. He said he did not understand the difference between thirty and one hundred percent at the time of the offer but understood it now. He said that if he had understood the difference at the time of the offer, he would have accepted it. He said he also would have accepted the State's plea offer because counsel told him that "[he] did not have a chance." Counsel did not use an investigator, and the petitioner did not know if any investigation was conducted in his case. He said he did not testify at trial because counsel said "it would not be good" for the petitioner.

On cross-examination, the petitioner said that the defense's theory was that he did not know about the drug deal. He said he did not know about the State's plea offer until three days after the trial but that he would not have pled guilty because he had to prove his innocence. Regarding his decision not to testify, he said he had to accept his attorney's advice because "[h]e is my attorney."

The petitioner's trial attorney testified that he was appointed to represent the petitioner and that they had "probably five or six discussion days" in the courthouse before the case was set for trial. They also had one or two meetings at the jail before trial. An interpreter was present every time one was available, and counsel was unaware of any communication problems. During their meetings, counsel and the petitioner discussed the State's evidence. The petitioner also told counsel his version of the events. Counsel said that he told the petitioner "how the trial would go and so forth" and that he answered the petitioner's questions "[t]o the best of my ability." Counsel received discovery and went over it with the petitioner. He said that he did not remember if the State made a plea offer but that it was his policy to discuss offers with his clients. He said he was sure he and the petitioner discussed whether the petitioner would testify. He said he would have gone over the strengths and

-3-

weaknesses of the State's case with the petitioner and that he always told his clients they could testify even if he advised against it. He said he "[a]pparently" did not request an instruction on facilitation.

On cross-examination, counsel acknowledged that the petitioner's trial occurred more than ten years before the evidentiary hearing, and he testified that "I do not remember a lot of it, no, I really do not." He said that he did not hire or use an investigator and that he "did what [he] thought needed to be done." He said he looked at discovery and may have talked to one of the officers at the scene. He did not think he interviewed any other witnesses or any of the petitioner's family members.

In a written order, the trial court specifically accredited counsel's testimony that he read through discovery, interviewed a detective, and met with the petitioner about eight times. The court concluded that the petitioner failed to prove trial counsel did not investigate his case adequately. As to the petitioner's claim that he received the ineffective assistance of counsel because counsel failed to request a jury instruction on facilitation, the trial court concluded that the petitioner failed to establish prejudice.

## II. Analysis

The appellant contends that he received the ineffective assistance of counsel because trial counsel (1) failed to adequately investigate his case, consult with him, or prepare for trial and (2) failed to request an instruction on facilitation. The State contends that the petitioner has failed to show he received the ineffective assistance of counsel. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's

findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

As to the petitioner's claim that trial counsel was ineffective because he failed to adequately investigate the case, consult with the petitioner, or prepare for trial, the trial court specifically accredited counsel's testimony. Counsel testified that he met with the petitioner five or six times at the courthouse and once or twice at the jail. Counsel said that he used an interpreter when one was available and that he did not know of any communication problems with the petitioner. Counsel said he went over discovery with the petitioner, talked with the petitioner about the strengths and weaknesses of the State's case, and answered the petitioner's questions. He said that he did not hire an investigator but that he looked at the discovery provided by the State. He also thought he spoke with an officer who had been at the scene. The petitioner has failed to explain what more counsel should have done to investigate his case, consult with him, or prepare for trial. Therefore, he has failed to show that counsel's performance was deficient or that he was prejudiced by any deficiency.

Regarding the petitioner's claim that counsel should have requested an instruction on facilitation, a panel of this court addressed the lack of a facilitation instruction as plain error on direct appeal and concluded that although the trial court should have instructed the jury

on facilitation, the error did not rise to the level of plain error. See State v. Roberto Vasques, No. M2004-00166-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 1100, at **70-71 (Nashville, Oct. 7, 2005). On appeal to our supreme court, the supreme court agreed, stating that "the Court of Criminal Appeals correctly determined that the omission did not qualify as plain error." Vasques, 221 S.W.2d at 524. The standard used to establish prejudice in post-conviction claims is "essentially the same " as the standard used to establish plain error. Douglas Marshall Mathis v. State, No. M2006-02525-CCA-R3-PC, 2008 Tenn. Crim. App. LEXIS 361, at *28 (Tenn. Crim. App. 2008), perm. to appeal denied, (Tenn. 2008). Therefore, "any claims of ineffective assistance of counsel in the post-conviction petition that were identical to Petitioner's claims on direct appeal and determined by this Court not to rise to the level of plain error also [fail] to establish prejudice in the context of a post-conviction proceeding." Charles Owens v. State, No. M2009-00558-CCA-R3-PC, 2010 Tenn. Crim. App. LEXIS 303, at *15 (Nashville, Apr. 13, 2010), perm. to appeal denied, (Tenn. 2010). Given that the petitioner failed to demonstrate plain error on direct appeal, he has failed to demonstrate a reasonable probability that the outcome of the proceedings would have been different had the jury been instructed on facilitation.

## III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE